**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-137-TFH** |
| | : | |
| **BRIAN GUNDERSEN,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**TO DISMISS COUNTS FOUR AND FIVE**

Defendant Brian Gundersen asks this Court to dismiss Counts Four and Five of the Superseding Indictment,[1] charging him with, respectively, and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), and engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) (ECF 38).[2] Specifically, he contends that these charges fail to state an offense because, in his view, the Vice President was not "temporarily visit[ing]" the U.S. Capitol when he was carrying out his constitutionally and statutory mandated obligations in the Capitol building on January 6, 2021. Gundersen's argument defies the plain text, structure, and purpose of the statute. Chief Judge Howell recently rejected the identical claim in *United States v. Gundersen*, No. 21-cr-184, ECF 65 (D.D.C. July 21, 2022). And at least four other judges of this District have rejected permutations of the same arguments in other January 6 cases. *See United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *20-21 (D.D.C. Feb. 1, 2022) (Bates, J.); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022) (Contreras, J.)*; United States v. Puma*, No.

---

[1] The motion refers to the "Superseding Indictment," but the operative charging document in the case is a Second Superseding Indictment, filed on May 26, 2021. See ECF 21.

[2] The motion refers to Count Five as also alleging a violation of 18 U.S.C. § 1752(b)(1)(A), but there is no such allegation in Count Five.

21-cr-454, 2022 WL 823079, at *16-18 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at *15 (D.D.C. May 25, 2022) (Lamberth, J.)*.* No district judge has sided with Gundersen's view. This Court should reach the same conclusion in this case and deny Gundersen's motion to dismiss.

## BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

An affidavit supporting the criminal complaint against the defendant partially describes his role in the January 6, 2021, attack on the Capitol. ECF 1-1. Among other facts, the affidavit describes the defendant's unauthorized presence in restricted areas of the Capitol grounds, and his initial denial, and later admission, that he entered the building. Contrary to Gundersen's claim of having been "pushed" into the building, the evidence shows he twice entered the Capitol, voluntarily.

At approximately 2:30 p.m., Gundersen was at the Senate Wing Door, screaming through a broken window at Capitol Police inside the building.



A few minutes later, Gundersen entered the Capitol through a fire door next to the Parliamentarian's Office, within seconds of the initial breach through this door.



Gundersen then entered the Parliamentarian's Office, remaining inside for approximately a minute before leaving and heading north through the Capitol building.



Gundersen entered another Senate office in the area and held up a "victory" hand sign at the rioters outside.



Gundersen was forced to leave the Capitol by police, and he exited through the North Door.



4

Gundersen then walked to the Senate Wing Door, and entered the Capitol again, through the broken window.



Gundersen was forced out of the Capitol a second time, and remained in the area of the Northwest Courtyard. At approximately 4:22 p.m., while police were attempting to clear rioters from the Northwest Courtyard, Gundersen attacked one of them, and was pushed back.



A few minutes later, Gundersen walked to another area of Northwest Courtyard, and made his way to the front line of rioters confronting police.



Shortly thereafter, police successfully cleared rioters, including Gundersen, from the Northwest Courtyard.

On January 25, 2021, Gundersen was charged by complaint. On February 19, 2021, an information was filed charging Gundersen with four misdemeanor offense arising from his conduct on January 6, 2021: Entering and Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2); Disorderly Conduct in the Capitol Grounds or Building, 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(G). On March 5, 2021, the grand jury returned a five-count superseding indictment charging defendant with the same four misdemeanor counts, and adding a charge of Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

On May 26, 2021, the grand jury returned a second superseding indictment, charging defendant with the same five counts, and adding a felony charge of Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), and misdemeanor charges of Engaging in Physical Violence in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(4), and Act of Physical Violence in the Capitol Grounds, 40 U.S.C. § 5104(e)(2)(F) (ECF 21).

Gundersen now moves to dismiss Counts Four and Five on the ground that the Vice President cannot "temporarily visit" the U.S. Capitol, as required to make the Capitol a "restricted building or ground" for purposes of Sections 1752(a)(2) and (4).

## LEGAL STANDARDS

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an indictment, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Ibid.*

## ARGUMENT

**The Court Should Deny Gundersen's Motion To Dismiss Counts Four and Five – Which Allege Violations Of 18 U.S.C. § 1752 – Because The Vice President Plainly Can "Temporarily Visit" The U.S. Capitol**

Counts Four and Five allege violations of Section 1752 of Title 18, which prohibits the unlawful entry into and disruptive or disorderly conduct in a "restricted buildings or grounds."[3] A "restricted building or grounds" is a "posted, cordoned off, or otherwise restricted area … where

---

[3]     Whether intentionally or inadvertently, Gundersen has not moved to dismiss Count Three of the Second Superseding Indictment, which alleges Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). All of the arguments set forth in this brief apply equally to Count Three

the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). At the time the defendant entered the U.S. Capitol during and in furtherance of the January 6, 2021, attack, the Vice President was present in the Capitol building. Gundersen's conduct accordingly falls within the Section 1752's plain sweep: as alleged in the information, Gundersen unlawfully entered and engaged in disorderly or disruptive conduct in a restricted building – *i.e.*, in an area where the Vice President was "temporarily visiting."

Gundersen nonetheless argues that Counts Four and Five fail to state violations of Section 1752 because Vice President Pence's presence at the Capitol on January 6, 2021, does not establish that he was "temporarily visit[ing]" the U.S. Capitol that day.  (ECF 38, at 2-19). He even claims that his is the "commonsense" reading of the statute. *Id.* at 10. Gundersen is wrong. His reading of Section 1752 contravenes the statute's plain terms, structure, and purpose. As Chief Judge Howell expressly concluded earlier this month (in a decision that Gundersen does not acknowledge), "[c]ommon sense easily resolves these challenges" in the government's favor. *United States v. Mels*, No. 21-cr-184, ECF 65, at 3 (D.D.C. July 21, 2022). At least four other district judges of this Court have reached the same conclusion. *See McHugh*, 2022 WL 296304, at *20-21; *Andries*, 2022 WL 768684, at *16-17*; Puma*, 2022 WL 823079, at *16-18; *Bingert*, 2022 WL 1659163, at *15. And nothing in Gundersen's motion, which just rehashes the flawed arguments raised in *Mels*, warrants a different result.

To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (internal quotation omitted) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). As noted, subsection 1752(c)(1)(B) defines "restricted buildings or grounds," in relevant part, as "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be *temporarily visiting*." (Emphasis added). In

turn, the verb "visit" means, *inter alia*, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[4] And the adverb "temporarily" adds that the protectee's visit must occur "during a limited time."[5]

As a textual matter, then, either definition of "visit" plainly describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the Second Superseding Indictment, two other Secret Service protectees (members of the Vice President's immediate family), also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings while they were ongoing and Vice President Pence was present. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. And all three protectees visited the Capitol temporarily – *i.e.*, during a limited time. Given the nature of the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting," 18 U.S.C. § 1752(c)(1)(B). *See Williams*, No. 1:21-cr-377, ECF 88, at 5-6 (adopting the "plain reading of the words" in subsection 1752(c)(1)(B) urged by the government); *McHugh*, 2022 WL 296304, at *21 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *Andries*, 2022 WL 768684, at *16 ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *Puma*, 2022 WL 823079,

---

[4]       https://www.merriam-webster.com/dictionary/visit (last visited June 21, 2022).
[5]       https://www.merriam-webster.com/dictionary/temporarily (last visited June 21, 2022).

at *17 (under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification.").

Gundersen's contrary contentions lack merit. First, Gundersen insists that the phrase "temporarily visiting" requires more than "physical[] presen[ce]" and must "include[] an implicit normally-lives-or-works carveout" – a carveout that, in Gundersen'ss view, is dispositive here because "[t]he Constitution obligates the Vice President to be physically present in the Senate with some frequency." (ECF 38, at 8-10). But Chief Judge Howell rejected this argument in *Mels*, and for good reason. "Despite having a limited role as President of, and tiebreaker for, the Senate . . . the Vice President is generally regarded as an executive branch officer, and generally works in locations other than the Capitol." *Mels*, No. 21-cr-377, ECF 65, at 3 (citing U.S. Const. art. I, § 3, cl. 4 and art. II, § 1, cl. 1). Moreover, "a government official can clearly appear somewhere temporarily and still be doing official work in the process." *Id.* It follows from these uncontroversial principles that "the Vice President's presence for official duties by presiding over a session of Congress" on January 6 did not "make him any less of a temporary visitor" at the Capitol on that day. *Ibid.*

Second, Gundersen observes that Vice Presidents have long had "a dedicated, permanent office" reserved for their use in the Senate. (ECF 38, at 3). That is true but irrelevant.[6] Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee, not the

---

[6]    To be clear, Gundersen's suggestion that "when Congress enacted § 1752 in 1971," the Vice President had an office in the Senate but "did not even have an office in the West Wing" (ECF 38, at9 (emphasis omitted)) is misleading. While Vice President Walter Mondale was the first to have an office in the West Wing, Vice Presidents had used offices in the Eisenhower Executive Office Building since 1960. *See, e.g.*, The Vice President's Residence and Office, https://www.whitehouse.gov/about-the-white-house/the-grounds/the-vice-presidents-residence-office/#:~:text=The%20Vice%20President's%20Ceremonial%20Office,on%20the%20White%20House%20premises (last visited June 21, 2022).

location of his or her physical offices. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at the close of the session, this visit was "temporar[y]." Or, as Chief Judge Howell put it in *Mels*, "[t]he fact that the Vice President has a space set aside in the Capitol for occasional use – notably, not the location where Vice President Pence was working inside the Capitol on January 6, 2021 – makes this official no less a 'visitor' and no less 'temporary' when making an appearance on the premises of the Capitol." *Mels*, No. 21-cr-184, ECF 65, at 3.

Third, Gundersen cites cases where either the President or Vice President were "traveling outside of the District of Columbia 'visiting' that area for a 'temporary' purpose." (ECF 38, at 11 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) (airport hangar); *United States v. Junot*, 902 F.2d 1580 (9th Cir. 1990) (unpublished) (park)). But Chief Judge Howell's recent ruling in *Mels* correctly rejected that argument as well: "the fact that those situations clearly qualify does not mean that the relevant situation on January 6 cannot count as well." No. 21-cr-184, ECF 65, at 3. The last case Gundersen cites, *United States v. Jabr*, No. 18-cr-105-PLF, 2019 WL 13110682, at *7 (D.D.C. May 16, 2019) (Friedman, J.), is even further afield. There, another judge of this District ruled that a *different* prong of 18 U.S.C. § 1752(c)(1) – subparagraph (A), which defines "restricted building or ground" to specifically include "any posted, cordoned off, or otherwise restricted area … of the White House or its grounds" – did not cover the U.S. Treasury Building or its grounds. *Id.* at *6-10. Nothing in that ruling or its reasoning supports Gundersen's position in this case.

Fourth, Gundersen asserts (ECF 38, at 12) that the common-sense interpretation adopted by every judge of this District to have considered the question, and by the government "creates fair notice problems." That is so, Gundersen argues, because, under that reading, "the statute's

reach expands and contracts based on fluid, unidentified factors" such as "the frequency with which the Vice President casts a tie-breaking vote, their personal preference for working in their Senate office, their travel schedule, etc." *Id.* at 13. But Gundersen's argument overlooks Section 1752(c)(1)'s overall structure. Once again, this Court's recent decision in *Williams* explains why:

> Under § 1752, certain conduct is criminalized in certain sensitive areas around both the President and the Vice President. The residences of both, whether the occupant is present or not, are covered at all times. 18 U.S.C. § 1752(c)(1)(A). When either the President or Vice President is "temporarily visiting" some other location, a *de facto* bubble follows him or her and affords similar protection. *Id.* § 1752(c)(1)(B). All of this makes sense, and creates no notice problems

*Mels*, No. 21-cr-184, ECF 65, at 4. Not only does this structure "make[] sense"; it removes *all* uncertainty as well: a person violates Section 1752(a)(1) and (2), at a minimum, whenever, with the requisite *mens rea*, he enters or remains in (or engages in disorderly or disruptive conduct in) a posted, cordoned off, or otherwise restricted area around the President or Vice President. The government's reading, in other words, ensures that Section 1752 supplies a predictable, uniform basis for prosecution whenever a suspect breaches the "*de facto* bubble" following the President and Vice President. It is Gundersen's own reading that, in contrast, "would produce absurd results" – by "inexplicably pop[ping] that bubble for an ill-defined set of destinations where the President or Vice President's presence is sufficiently 'frequent' or the reason for their presence sufficiently 'official.'" *Mels*, No. 21-cr-377, ECF 64, at 4 ("The Court declines to introduce such needless ambiguity into a simple statutory phrase."). *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

Finally, Gundersen asserts (ECF 38, at 14-17) that that his interpretation is supported by the rule of lenity. But that claim is also unavailing. The Supreme Court has made clear that the

12

rule applies only if, "'after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended.'" *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)). No such ambiguity exists here. As explained above, Section 1752's text, structure, and purpose yield a clear meaning. The rule of lenity should, therefore, play no role in this case.[7]

---

[7]     Citing Justice Gorsuch's concurrence in the judgment in *Wooden v. United States*, 142 S. Ct. 1063 (2022), Gundersen suggests that there is "ambiguity in the case law over the level of ambiguity required to trigger the rule of lenity." (ECF 38, at 15 n.13). He is again incorrect. First, Justice Gorsuch's concurrence in *Wooden*, which only one other Justice joined, is not – and does not reflect – binding precedent. Under Supreme Court precedent, "the rule of lenity does not apply when a law merely contains some ambiguity or is difficult to decipher." *Id.* at 1075 (Kavanaugh, J., concurring). It applies only when the ambiguity is "grievous[]"– *i.e.*, "'at the end of the process of construing what Congress has expressed.'" *Ibid.* (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)). Justice Gorsuch's concurrence itself recognizes that the Supreme Court has set the bar for lenity at grievous ambiguity. *Id.* at 1084. This Court should apply the controlling grievous ambiguity standard, leaving it to the Supreme Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Second, even under Justice Gorsuch's view, lenity comes into play only "[w]here the traditional tools of statutory interpretation yield no clear answer." *Wooden*, 142 S. Ct. at 1085-1086. As explained above, with respect to the meaning of "restricted buildings or grounds," those traditional tools of interpretation do yield a clear answer.

**CONCLUSION**

For these reasons, the defendant's motion to dismiss Counts Four and Five of the Second

Superseding Indictment should be denied.

Dated: September 6, 2022.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  _____/s/_____
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:21-cr-00184-BAH** |
| | **:** | |
| **JAMES ALLEN MELS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**ORDER**

Upon consideration of the United States' motion to dismiss Counts One and Two of the

information, it is hereby ORDERED, that the motion is DENIED.

Date:

_____
THE HONORABLE BERYL A. HOWELL
UNITED STATES CHIEF DISTRICT JUDGE